UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL L., )
 )
       *Plaintiff* )
 )
v. ) No. 2:18-cv-00208-LEW
 )
ANDREW M. SAUL, )
*Commissioner of Social Security*,[1] )
 )
       *Defendant* )

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in determining both his physical and mental residual functional capacity ("RFC") and in evaluating his subjective statements. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 3-16. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Act through September 30, 2013, Finding 1, Record at 40; that he had the severe impairments of personality disorder, affective disorder, anxiety disorder, drug and alcohol substance abuse disorders, and right hip avascular necrosis status post surgery, Finding 3, *id.*; that he had the RFC to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he could frequently kneel, crouch, crawl, and climb ladders, scaffolds, and ropes, was able to perform simple, routine tasks, work in sight of coworkers but do no teamwork or collaborative work, adapt to simple changes in the work routine, and could not work with the general public, Finding 5, *id.* at 44; that, considering his age (43 years old, defined as a younger individual, on his alleged disability onset date, April 3, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 53; and that he, therefore, had not been disabled from April 3, 2012, his alleged onset date of disability, through the date of the decision, June 7, 2017, Finding 11, *id.* at 54-55. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Challenge to Physical RFC Determination

The plaintiff contends that, in determining his physical RFC, the ALJ erred in weighing the expert opinions of record and in omitting to include a need for a cane or other assistive device. *See* Statement of Errors at 5-11. I find no reversible error.

#### 1. Weighing of Expert Opinions

##### a. Background

The record contains the opinions of five experts addressing the impact of the plaintiff's right hip avascular necrosis, for which he underwent a total hip replacement in September 2015. From oldest to most recent, those opinions are as follows:

1. On March 20, 2015, treating physician James A. Katz, M.D., wrote that the plaintiff had avascular necrosis of his right hip and could not work for approximately six months, noting, "We are getting orthopedic consult." Record at 546.

2. On April 23, 2015, for purposes of a MaineCare determination, consultant Charles Burden, M.D., indicated that the plaintiff's impairment met Listing 1.02 of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P. *See* Record at 397-98. Dr. Burden recommended that the plaintiff's status be reviewed in one year. *See id*. at 397. He summarized two medical records, a February 2015 record in which the plaintiff "alleg[ed] back pain and

weakness but [had] normal strength and gait on PE [physical examination,]" and a March 2015 record in which the plaintiff was noted to have "LBP [low back pain] with radiation down RLE [right lower extremity], reflexes normal, able to walk, MRI with AVN [avascular necrosis] and mircrofracture R [right] hip, HNP [herniated nucleus pulposus] without definite impingement." *Id*. at 398.

3. On August 17, 2015, on initial review, agency nonexamining consultant Donald Trumbull, M.D., stated that there was insufficient evidence to assess the severity of the plaintiff's physical allegations as of his date last insured for SSD benefits ("DLI"), September 30, 2013, but that, for the period from March 18, 2015, through March 17, 2016, the plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk with normal breaks for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, push and/or pull within the capacities shown for lifting and/or carrying, and frequently climb ladders, ropes, or scaffolds, kneel, crouch, and crawl. *See* Record at 135-37. He noted no other physical limitations. *See id*. He explained that the plaintiff's right hip impairment was "severe now" with "planned surgery and upcoming rehab[,]" and that, "in the absence of severe co-morbidities" and with "full attention" to his treating source's "advice/care plan including smoking cessation," it was "reasonable to anticipate this RFC by 12[] mos." *Id*. at 136.[3]

4. On March 1, 2016, on reconsideration, agency nonexamining consultant Archibald Green, D.O., concurred that there was insufficient evidence to assess the severity of the plaintiff's physical allegations for the period as of his DLI, *see id*. at 169, and that the physical RFC assessed

---

[3] Dr. Trumbull's reference to a 12-month period is significant because, to be found disabled, a claimant must meet the so-called "duration requirement," pursuant to which both an impairment and a resulting inability to work must last, or be expected to last, for a continuous period of at least 12 months, *see, e.g.*, 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002) (commissioner's 12-month duration requirement applies "to both the 'impairment' and the 'inability' to work requirements").

4

by Dr. Trumbull remained appropriate, with "[n]o change" at the reconsideration stage of review, *see id*. at 183-84.

5.    On June 27, 2016, treating physician Oren Gersten, M.D., indicated that the plaintiff could stand and/or walk for less than two hours in an eight-hour workday, never climb, and occasionally balance, kneel, crouch, crawl, and stoop. *See id*. at 1092-93. With respect to the assessed sitting/walking limitation, he wrote that walking and standing were limited to less than one hour a day "due to right hip and back pain[,]" that the plaintiff's "recovery [was] complicated by atypical post-operative pain[,]" that the plaintiff could not "walk for more than 100 yards at a time despite physical therapy and integrative medicine[,]" and that he did "not expect his function to improve beyond its current capacity[.]" *Id*. With respect to the assessed postural limitations, he explained that performance of those activities was "limited by pain[,]" that "[c]limbing would be dangerous given instability[,]" and that balancing, kneeling, crouching, crawling, and stooping required "movement of [the] right hip[,] which he is not able to do without pain[.]" *Id*. at 1093. The form that Dr. Gersten completed indicated that this was his professional opinion as to the plaintiff's physical limitations from April 3, 2012, to the present. *See id*. at 1095.

The ALJ gave "great weight" to the opinions of Drs. Trumbull and Green and "very little weight" to those of Drs. Katz, Burden, and Gersten. *Id*. at 50-51.

### b. Analysis

The plaintiff challenges the ALJ's reliance on the Trumbull and Green opinions on the bases that neither offered any opinion for the period prior to March 2016, both provided opinions only for the period from March 2015 to March 2016, and both merely projected that, following surgery and rehabilitation, he would be able to perform medium work. *See* Statement of Errors at 3-5. He adds that, although Dr. Green's opinion postdated his surgery, Dr. Green "apparently did not review the surgical notes, instead talking in terms of the 'planned surgery and upcoming

5

rehab.'" *Id*. at 3 (quoting Record at 184). He argues that remand is warranted because in this case, as in *Christopher H. v. Berryhill*, No. 1:17-cv-00246-JAW, 2018 WL 3539439 (D. Me. July 23, 2018) (rec. dec., *aff'd* Sept. 10, 2018), the ALJ made no finding as to his ability pre- and post-surgery, ignoring the temporal limitations of the Trumbull and Green opinions. *See id*. at 4-5. He adds that, because Drs. Trumbull and Green did not anticipate, in projecting his recovery from surgery, that he would develop chronic post-operative pain, their opinions cannot stand as substantial evidence of his condition throughout the relevant period. *See id*. at 9 (arguing that the Trumbull and Green opinions "would necessarily have been altered had [they] had the opportunity to see the later records").

This case is materially distinguishable from *Christopher H.*, in which the ALJ rejected all expert opinions of record bearing on the question of a claimant's ability to stand and walk on the basis that they predated what he described as a "'drastic' or 'great' improvement" following the claimant's knee surgery. *Christopher H*., 2018 WL 3539439, at *4. In that context, the court noted, "to focus on an improvement post-surgery necessarily begs the question of the plaintiff's condition pre-surgery, and the ALJ failed to address the latter." *Id*. The court held that remand was required when "the ALJ's finding as to the plaintiff's ability to stand [wa]s unsupported by either expert medical opinion or the plaintiff's own testimony, and, in any event, the ALJ made no findings concerning the plaintiff's standing and walking capacity during a significant portion of the period at issue." *Id*. (footnote omitted).

In this case, by contrast, the ALJ gave great weight to the Trumbull and Green opinions, explaining that she found the longitudinal evidence as a whole consistent with their assessed RFC:

> Although the reconsideration opinion was rendered in March[] 2016, as noted above, there is no record evidence that the [plaintiff] has received any further treatment for his right hip condition or nonsevere DDD since that time. [The Trumbull and Green] opinions are consistent with the evidence of record as a

> whole, as detailed herein, including the [plaintiff]'s previous ability to walk 15 miles a day and engage in martial arts, successful total hip replacement with a return to extended walking as of January[] 2016, physical examinations demonstrating objectively improved right hip functioning, reports of pain in the context of ongoing "drug seeking behavior," and polysubstance abuse, activities, and inconsistent statements.

Record at 50-51 (citations omitted).

An ALJ may rely on the opinions of agency nonexamining consultants who have not seen later-submitted evidence when that evidence does not "call into question their conclusions[.]" *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013). "While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]" *Id*. (citation and internal quotation marks omitted). The task of judging whether evidence *predating* an expert's opinion comports with that opinion is no different in kind from that of judging whether evidence *postdating* it does. In sum, unlike the ALJ in *Christopher H.*, the ALJ in this case explained that she found the Trumbull and Green opinions consistent with the longitudinal evidence bearing on the entire period at issue.

As the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 4, a careful reading of the Green opinion makes clear that Dr. Green considered the plaintiff's postoperative progress in concluding that he could perform a limited range of medium work, *see* Record at 180-81 (summarizing record evidence for period from September 18, 2015, through January 14, 2016, at which point "hip pain stable"), 184 (noting "[n]o change" from Dr. Trumbull's opinion).

Remand, accordingly, is unwarranted on the basis of the ALJ's handling of the Trumbull and Green opinions.

The plaintiff next contends that the ALJ provided no valid reasons for essentially rejecting the Katz, Burden, and Gersten opinions. *See* Statement of Errors at 4-10. I find no basis on which to disturb her decision to accord those opinions little weight.

The ALJ explained that she gave little weight to the Katz opinion because Dr. Katz had not "provided the [plaintiff] with any permanent restrictions or a detailed function-by-function analysis[,]" rendering his opinion "of very limited value in evaluating the [plaintiff]'s longitudinal functioning and in formulating his RFC[,]" and, "to the extent Dr. Katz's assessment suggests a more restrictive RFC, it is inconsistent with the evidence of record as a whole, as detailed herein, including the [plaintiff]'s successful total hip replacement, physical examinations with objective postoperative improvement, and activities, including a return to extended walking without any assistive device." *Id*. at 51 (citations omitted).

That the Katz opinion was of limited utility in assessing the plaintiff's RFC and at odds with the longitudinal record were facially valid, and good, reasons to reject even the opinion of a treating physician such as Dr. Katz. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.");[4] *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("[L]ack of support and

---

[4] I quote from the regulations in effect at the time of the issuance of the ALJ's decision. *See* Record at 55. Those regulations were superseded as to claims filed on or after March 27, 2017, by 20 C.F.R. §§ 404.1520c and 416.920c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c, 416.920c.

inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight.").

The plaintiff concedes that Dr. Katz provided no functional analysis; however, he argues that Dr. Katz's "note sufficiently conveyed that [he] suffered from a serious hip problem that would so severely impair the standing and/or walking functions that [he] could not perform full time work[,]" and that the ALJ erroneously "focused on notes regarding the post-operative period[.]" Statement of Errors at 7. At oral argument, his counsel elaborated that it made no sense for the ALJ to discount the Katz opinion on the basis of its inconsistency with the record as a whole when Dr. Katz addressed only the plaintiff's condition prior to surgery.

Nonetheless, as the commissioner observes, *see* Opposition at 9, an opinion as to whether a claimant can work full-time "is an opinion on an issue reserved to the commissioner and, thus, entitled to no special significance even if offered by a treating source[,]" *Brown v. Berryhill*, No. 1:17-cv-00196-JAW, 2018 WL 1891572, at *4 (D. Me. Apr. 20, 2018) (rec. dec., *aff'd* May 9, 2018) (citing 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3)). "[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand." *Id.* (citation and internal quotation marks omitted).

The ALJ explained that she accorded little weight to the Burden opinion because "Dr. Burden provided no analysis or narrative in support of his opinion beyond [a] brief chronology of the medical record evidence of record[,]" Dr. Burden "acknowledged that the [plaintiff] was able to walk[,]" which, in the ALJ's view, "did not demonstrate an inability to ambulate effectively, as defined in [Listing] 1.00B2b[,]" and, "although the [plaintiff] did use a cane or crutches from some time before his surgery and during his postoperative recovery, he was not using any assistive

9

device as of December[] 2015, and by January[] 2016, . . . was reporting that he was able to walk extended distances." Record at 51 (citations omitted).

Dr. Burden was not a treating physician and, accordingly, the ALJ was not required to supply good reasons for her handling of his opinion. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nonetheless, she did so, supplying rationales that suffice even to afford a treating source's opinion little weight. *See, e.g.*, *Campagna*, 2017 WL 5037463, at *4 ("[L]ack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight.").

At oral argument, the plaintiff's counsel took issue with the ALJ's observation that Dr. Burden's Listings opinion was undercut by his own notation that the plaintiff was able to walk. The plaintiff's counsel observed that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Listing 1.00(B)(2)(b)(2). However, the Listings also generally define "ineffective ambulation" as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Listing 1.00(B)(2)(b)(1). Dr. Burden did not note any qualification of the plaintiff's ability to walk, merely indicating that he was found "able to walk" at a March 2015 Mercy Hospital visit. Record at 398. The ALJ reasonably deemed this observation in tension with the requirement of Listing 1.02(A) that a claimant be unable to ambulate effectively, as defined in Listing 1.00(B)(2)(b).

Finally, the ALJ explained that she gave little weight to the Gersten RFC assessment because it was "greatly in excess of and inconsistent with the evidence of record as a whole, as detailed in this Decision, including the [plaintiff]'s objective improvement in functioning after his surgery, report in January[] 2016, that he was able to walk extended distances independently, lack

10

of medical follow up since early 2016, [evidence that he was] observed hiking up a steep hill, lack of any instability noted on his physical examinations, and Dr. Gersten's own observation that the [plaintiff] had 'shown signs of drug seeking behavior' regarding his complaints of pain, and was unwilling to try gabapentin or amitriptyline as [an] alternative to narcotic pain medication." *Id*. at 51 (citation omitted).

Again, these constituted "well-recognized bases for affording a treating source's medical opinion little or no weight." *Campagna*, 2017 WL 5037463, at *4.

The plaintiff nonetheless argues that the ALJ's handling of the Gersten opinion cannot stand because "[s]he was simply focused on, and obviously bothered by, [his] use of alcohol and medication to suppress his pain" and "conflated drug use with a lack of disability[.]" Statement of Errors at 8-9. This criticism misses the mark, not only because the ALJ supplied additional valid reasons for rejecting the opinion but also because Dr. Gersten's own observation of signs of drug-seeking behavior, *see* Record at 926, reasonably could be viewed as calling into question the validity of the plaintiff's subjective complaints of post-surgical pain.[5]

Remand, accordingly, is unwarranted on the basis of the ALJ's weighing of the Katz, Burden, and Gersten opinions.

## 2. Use of Cane

The plaintiff next contends that, in determining his physical RFC, the ALJ erroneously failed either to assess a need for a cane or to explain why no such limitation was warranted. *See*

---

[5] The plaintiff acknowledges that the ALJ deemed the Gersten opinion "'greatly in excess of and inconsistent with the evidence of record as a whole, as detailed in this Decision[.]'" Statement of Errors at 7 (quoting Record at 51). However, he relies on her discussion at page 41 of the record for the proposition that, although she "cited a number of records which she wrote showed an absence of pain[,]" those records do not support a lack of complaints of right hip and foot pain. *Id*. at 7-8. Nonetheless, in the cited section of the decision, the ALJ was explaining why she deemed a different condition, the plaintiff's alleged DDD with back pain, nonsevere. *See* Record at 41. She later summarized the longitudinal record evidence bearing on the plaintiff's right hip impairment, including his complaints of associated pain and her reasons for discounting them. *See id*. at 45-46.

11

Statement of Errors at 11. He observes that he was noted to have been using a cane for roughly eight months as of September 1, 2015, and continued to use a cane or crutches until at least December 2015. *See id.*

However, as the commissioner observes, "the facts of this case suggest that Plaintiff's cane was not prescribed, and that his use of assistive devices was limited in scope and duration – factors that [Drs. Trumbull and Green] and the ALJ were . . . aware of when assessing a medium level RFC that did not include a specific limitation for the use of a cane." Opposition at 11; *see also* Record at 131, 180.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Challenge to Mental RFC Determination

The plaintiff challenges the ALJ's mental RFC determination on the basis that the ALJ refused even to consider the opinion of a treating psychiatrist, Fernando Barrera, M.D. *See* Statement of Errors at 13-16. I find no error.[6]

In an opinion dated March 17, 2017, Dr. Barrera indicated that the plaintiff (i) could work for 20 or more hours, but not 30 or more hours, per week, (ii) was "debilitated by high levels of anxiety" and needed a "low stress environment with limited social interactions" as well as rest breaks every two hours, and (iii) would be unable to perform workfare/job searches for six months. Record at 1131.

The ALJ gave the Barrera opinion "very little weight[,]" explaining:

> This form was completed in the context of the [plaintiff]'s receipt of General Assistance through the City of Portland, and whether or not the [plaintiff] could engage in workfare through that program. To the extent Dr. Barrera has personally treated the [plaintiff], the medical evidence does not include any treating records

---
[6] The ALJ generally gave "great weight" to the February 2016 mental RFC assessment of agency nonexamining consultant Thomas Knox, Ph.D., and "less weight" to the July 2015 opinion of agency nonexamining consultant Brian Stahl, Ph.D., which she considered superseded by that of Dr. Knox to the extent the two differed. *See* Record at 50. The plaintiff summarizes those findings but does not separately challenge them. *See* Statement of Errors at 13-16.

> from this provider. Dr. Barrera provides no narrative in support of his opinions other than to state that the [plaintiff] has high levels of anxiety, does not specifically identify the [plaintiff]'s signs or symptoms or discuss [his] current treatment regime. He also does not address the [plaintiff]'s polysubstance abuse as one of [his] "disabling conditions," or recommend any substance abuse rehabilitation or "inpatient/detox," despite the [plaintiff]'s history of extensive polysubstance abuse with innumerable inpatient detoxifications, as detailed above, and the [plaintiff]'s admission at the hearing that he continues to drink alcohol. For these reasons, I have not considered Dr. Barrera's opinion regarding the [plaintiff]'s ability to sustain full-time work. However, his recommendations that the [plaintiff]'s social interactions be limited and that [he] be provided with a low stress work environment are not inconsistent with the [plaintiff]'s mental RFC limiting [him] to simple, routine tasks; work in sight of coworkers but no teamwork or collaborative work; no work with the general public; and ability to adapt to simple changes in the work routine.

*Id*. at 51-52 (citations omitted).

Plainly, while the ALJ stated that she had not "considered" Dr. Barrera's opinion regarding the plaintiff's ability to sustain full-time work, she meant that she had given that portion of the opinion no weight, articulating her reasons for doing so.

The plaintiff argues, in the alternative, that the reasons supplied were not good ones, asserting that the ALJ (i) failed to acknowledge that Dr. Barrera was a treating physician or to supply good reasons for discounting his opinion, (ii) improperly faulted the plaintiff for failing to supply Dr. Barrera's treatment notes when the production of psychotherapy notes is not required and, in any event, the ALJ did not ask for them, and (iii) wrongly deemed the plaintiff to be actively abusing substances. *See* Statement of Errors at 15-16.

Even assuming *arguendo* that the ALJ erred in any or all of those respects, there is no reversible error. To the extent that the ALJ discredited that portion of the Barrera opinion indicating that the plaintiff could not work full-time, the issue was reserved to the commissioner. *See, e.g.*, *Brown*, 2018 WL 1891572, at *4 ("[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand.") (citation and internal quotation marks omitted). The ALJ indicated that the

remainder of the Barrera opinion was not inconsistent with her mental RFC finding, *see* Record at 52, and the plaintiff has not shown otherwise, *see* Statement of Errors at 13-16.

### C. Challenge to Assessment of Plaintiff's Subjective Allegations

The plaintiff, finally, faults the ALJ for purporting to give the Trumbull and Green opinions great weight but failing to explain why she declined to adopt their finding that "his statements about the intensity, persistence and functionally limiting effects of his symptoms were 'substantiated by the objective medical evidence alone.'" Statement of Errors at 12-13 (quoting Record at 135, 169). She adds that the ALJ failed to make specific findings in support of her conclusion that the plaintiff's statements concerning his symptoms were "'mainly not consistent with the medical evidence and other evidence in the record[.]'" *Id*. at 12 (quoting Record at 45).

As the commissioner rejoins, *see* Opposition at 19-20, any error in failing to adopt an agency nonexamining consultant's finding that a claimant's allegations are credible is harmless when an ALJ adopts that consultant's RFC assessment, *see, e.g., Meacham v. Astrue*, Civil No. 09-590-P-S, 2010 WL 4412113, at *6-7 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010). The plaintiff's further assertion that the ALJ failed to make specific findings is without merit. To the contrary, the ALJ discussed in detail the record evidence supporting her conclusions, including the objective medical evidence and the plaintiff's treatment history and activities, with pinpoint citations to the underlying record. *See* Record at 45-50.

At oral argument, in response to the commissioner's observation that the ALJ had made multiple factual findings supported by record citations, *see* Opposition at 17-19, the plaintiff's counsel contended that the ALJ had cherry-picked the evidence, minimizing his client's ongoing difficulties following his surgery. Nonetheless, "[t]he mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand." *Malaney*

14

*v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).

Remand, accordingly, is unwarranted on this final basis, as well.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of July, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge